NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DENNIS NIEVES,                          :

       Plaintiff,         :
                                       Civil Action No. 04-4266(JWB)
    v.                              :

                                         **O P I N I O N**

COMMISSIONER OF                         :
SOCIAL SECURITY,
                             :
       Defendant.
                             :

**APPEARANCES**:

    LANGTON & ALTER
    By: James Langton, Esquire
    2096 St. Georges Avenue
    P.O. Box 1798
    Rahway, New Jersey 07065
    (Attorneys for Plaintiff)

    CHRISTOPHER J. CHRISTIE
    United States Attorney
    By: Andreea Lechleitner
        Special Assistant U.S. Attorney
    Social Security Administration
    Office of General Counsel
    26 Federal Plaza, Room 3904
    New York, New York 10278-0004

**BISSELL**, Chief Judge

    This case comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of Social Security, which denied Plaintiff Dennis Nieves's request for Supplemental Security Income ("SSI") payments under

the Social Security Act, 42 U.S.C. § 423, et seq.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 405(g).  For the reasons set forth below, Plaintiff's appeal is DENIED and the ALJ's findings are AFFIRMED

## FACTS AND PROCEDURAL HISTORY

### I.  Parties

Plaintiff Dennis Nieves ("Plaintiff" or "Nieves"), is a resident of New Jersey who alleges that he has been disabled due to severe symptomatology from diabetes and neurological conditions.  (Compl. ¶¶ 2, 5.)

Defendant Commissioner of the Social Security Administration (the "Commissioner") is charged with the Administration of the United States Social Security Act.  (Id. ¶ 3.)

### II.  Background and Prior Proceedings

On July 31, 2001, Nieves filed an application for SSI payments alleging disability due to diabetes and hypertension beginning January 10, 2001.  (Admin. Rec. at 49-51, 62-71.)  His application for SSI payments was denied initially and on reconsideration.  (Id. at 29-33, 35-37.)  Nieves requested a hearing before an Administrative Law Judge for de novo review and a hearing was held on March 20, 2003 before Administrative Law Judge Joel H. Friedman ("ALJ Friedman").  (Id. at 16-26.)

On August 22, 2003, ALJ Friedman determined that Nieves was not eligible for SSI payments under Section 216(I), 223, 1602,

1614(a)(3)(A) respectively of the Social Security Act.  (<u>Id.</u> at 26.)  The ALJ's finding were:

    1.    [Plaintiff] meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits only through March 30, 2001[;]

    2.    The [Plaintiff} has not engaged in substantial gainful activity since the alleged onset of disability[;]

    3.    The [Plaintiff] has an impairment or a combination of impairments considered 'severe' based on the requirements in the Regulations 20 CFR 404.1520(b) and 416.920(b)[;]

    4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4[;]

    5.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision[;]

    6.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR 404.1527 and 416.927)[;]

    7.    The [Plaintiff] has the following residual functional capacity; light work as defined in 20 CFR 404.1567 and 416.967 (lift and carry up to 20 pounds occassionally and 10 pounds frequently; stand/walk up to 6 hours in an 8 hour day; and sit up to 6 hours in an 8 hour day)[;]

    8.    The [Plaintiff's] past relevant work as a security guard and gate guard did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR 4040.1565 and 416.965)[;]

    9.    The [Plaintiff's] medically determinable impairments (diabetes and hypertension) do not

        prevent the claimant from performing his past relevant work[;]

10.    The [Plaintiff] was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(e) and 416.920(e)).

(Id. at 25-26.)  Nieves requested a review by the Appeals Council which was denied by action of the Appeals Council dated July 10, 2004.  (Id. at 5-7.)  Nieves thereafter filed a complaint with this Court claiming that ALJ Friedman's and the Appeal Council's affirmation of that decision were clearly erroneous in law and fact.  (Compl. ¶ 9.)

**A.    Non-Medical Evidence**

At the time of the hearing Nieves was forty-two years old, had obtained a graduation equivalency diploma ("GED") and had prior work experience as an electrical welder and a security guard.  (Id. at 21, 49, 64, 69, 244-47.)  Nieves claimed that he became disabled on January 10, 2001 due to diabetes and hypertension.  (Id.)  In particular, Nieves was last hospitalized for three days in the summer of 2000 when his blood sugar was 575.  (Id. at 18.)  He stated that his blood sugar was high because he had no funds to buy insulin.  (Id.)  Nieves, however, claimed that he has not missed an insulin dose after that incident because he began receiving welfare and medicaid in July 2001.  (Id.)  Due to his diabetic condition, Nieves allegedly experienced numbness in the right arm and right leg, unsteady

feet, difficulty gripping objects and blurred vision.  (Id. at 63.)

Further, Nieves alleges that his medical condition made it difficult for him to work because one security job required him to sit for one hour, stand for four hours, walk for five hours and entailed no lifting and carrying.  (Id. at 64.)  Another security guard position required Nieves to guard a gate, sitting at a booth and pushing a button to lift a gate up or down.  (Id. at 248.)  Nieves also testified that he tried to work in a "fish place," but decided to leave because he experienced dizziness while on the job.  (Id. at 228.)

Nieves, however, admitted that he went for daily walks in the park, shopped with a friend, prepared his own meals, cleaned his apartment, used public transportation, read and visited with friend and relatives.  (Id. at 80-81.)  Also, he stated that he attends movie theaters and eats out on occasion.  (Id. at 251.)  In addition, Nieves has performed car maintenance for friends and family in exchange for money.  (Id. at 229, 251.)  Moreover, when the ALJ requested that Nieves explain why he had very little earnings in 1993, 1994, 1995, 1996 and 1999, given that he was alleging disabled as of January 2001, Nieves stated that he "worked off the book[s]."  (Id. at 243.)  Further, Nieves admitted that he could lift thirty or forty pounds and had no problems sitting, although his legs swell up when he sits.  (Id.

-5-

at 255-56.)  Additionally, Nieves admitted that he had no problems with his arms or hands, could stand for one-half hour and could see without reading glasses.  (Id. at 256-58.)

**B.   Medical Evidence**

Medical reecords from Trinitas Hospital document treatment for diabetes since June 1999.  (Id. at 114-21.)  On July 25, 2000, following a hospitatlization for elevated blood glucose, Nieves received a prescription for insulin (Id. at 117.)  Nieves, however, did not attend his following appointment, scheduled for August 9, 2000.  (Id. at 117.)

During a follow-up exam, on November 1, 2000, the examiner acknowledged that Nieves' glucose was 305, that he had run out of insulin for five days and that his compliance with treatment was poor.  (Id. at 115.)  During a subsequent follow-up, on January 25, 2001, the examiner noted that Nieves's glucose was 308 and he was asymptomatic.  (Id. at 115.)  The examiner also noted that Nieves' compliance with treatment was questionable.  (Id.) During a February 8, 2001, follow-up, the examiner noted that Nieves ran out of insulin and did not re-purchase more insulin. (Id. at 114.)  On that visit, however, the physical examination revealed unremarkable heart sounds and clear lungs.  (Id.)

On November 6, 2001, Nieves was examined by Dr. R.C. Patel, at the request of the Commissioner.  (Id. at 134-35.)  Nieves complained of blurred vision, but noted that he does not wear

glasses.  (Id. at 135.)  Nieves complained of headaches, shortness of breath, pain and weakness in the right lower extremity.  (Id.)

Dr. Patel noted that Nieves' vision in the left eye was 20/30 and in the right eye 20/40.  (Id.)  Dr. Patel also noted that Nieves walked with a normal gait and did not appear distressed.  (Id.)  Further, an examination of Nieves' lungs revealed normal breath sounds and no wheezing or rales.  (Id.)  Moreover, an examination of his heart revealed normal sinus rhythm and no murmur.  (Id.)  Nieves blood pressure was normal and his lower extremities revealed normal reflexes and tenderness.  (Id.)  Nieves sensation was normal, no gross deficits or neurologically.  (Id.)  Examination of the hands revealed normal grip strength and no swelling.  (Id.)

Dr. Patel concluded that Nieves had diabetes mellitus, and that he could not rule out the possibility of diabetic retinopathy.  (Id.)  He also noted that Nieves had weakness in the right lower extremity and shortness of breath of unknown etiology.  (Id.)  Dr. Patel, however, found that Nieves had no evidence of neuropathy or any vascular involvement from the diabetes.  (Id. at 136.)  On December 7, 2001, Dr. Theodore Turner, a State agency physician, reviewed the medical evidence, including Dr. Patel's report, concluding that Nieves had no exertional or non-exertional limitations.  (Id. at 148.)

On December 4, 2001, Nieves was admitted to the emergency room of Trinitas Hospital for complaints of a cough, sore throat vomiting and diarrhea.  (Id. at 151.)  The physician advised Nieves to undergo additional blood tests and intravenous hydration, when he discovered Nieves' blood glucose was 330.  (Id. at 153.)  Nieves, however, refused to consent to the treatment.  (Id. at 151, 160.)

On February 9, 2002, Nieves sought treatment at Gregory Medical Associates, for decreased sensation in his foot.  (Id. at 176.)  A comprehensive examination of his head, heart, lungs, abdomen, neurologic system and vascular system was unremarkable, although Nieves was diagnosed with neuropathy.  (Id. at 182-83.)  During follow-ups on March 12 and April 9, 2002, for his diabetes, Nieves was asymptomatic (Id. at 177-78.)  An x-ray, dated June 11, 2002, of Nieves' right foot was normal. (Id. at 193.)  A Doppler study, dated July 26, 2002, revealed that Nieves' arteries were normal.  (Id. at 196.)

On April 7, 2003, Dr. Jose Sanchez Pena of Broadway Medical Associates provided a medical report to Nieves' attorneys.  (Id. at 197.)  Dr. Pena reported that Nieves had insulin dependent diabetes mellitus with neuropathy and retinopathy.  (Id.)  Dr. Pena's report stated that Nieves had a "mild" impairment of the retina.  (Id.)  He also reported that Nieves had no limitation in lifting or carrying.  (Id. at 194.)  Dr. Pena concluded that

-8-

Nieves could sit for less than four hours per work-day and stand or walk for less than four hours per work-day. (Id. at 195.) He also concluded that Nieves should avoid extreme temperatures, noise and vibration. (Id. at 196.)

**C.   Nieves's Present Claim**

Nieves specifically argues that the Commissioner's decision is unsupported by substantial evidence in the record. (Pl.'s Br. at 4.) Plaintiff argues that substantial evidence exists in the record to suport a finding of disability pursuant to 42 U.S.C § 405(g) and 1382. (Id. at 4.) Nieves therefore requests that this Court reverse ALJ Friedman's decision denying him SSI payments. (Id. at 4.)

### DISCUSSION

**I.   District Court's Scope of Review**

Findings of fact by the ALJ must be accepted as conclusive by a reviewing court if they are supported by substantial evidence. Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) (citing Lewis v. Califano, 616 F.2d 73, 76 (3d Cir. 1980) and 42 U.S.C. § 405(g)). "Substantial evidence is such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." Id. A finding of substantial evidence necessitates "more than a mere scintilla of evidence but less than a preponderance." Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).

In reviewing the decision of the ALJ, the Court "need[s] from the ALJ not only an expression of the evidence [he or she] considered which supports the result, but also some indication of the evidence which was rejected." Cotter, 642 F.2d at 705 ("In the absence of such an indication the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."); see also Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001) (collecting cases in support of this proposition). However, in deciding whether the ALJ's decision is supported by substantial evidence, the Court may not weigh the evidence or substitute its judgment for that of the ALJ, even if the Court might have reached a different conclusion. Williams v. Sullivan,970 F.2d 1178, 1182 (3d Cir. 1992). If the record, read as a whole, would allow a reasonable mind to accept the conclusions reached by the ALJ, the Court must uphold his or her determination. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal citation omitted). Therefore, if the ALJ's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 401.

**A.  Statutory and Regulatory Standard for Disability**

To meet the disability requirement of 42 U.S.C. § 423(d), a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which . . . had lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An impairment is not disabling unless it is of such severity that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work . . . in the national economy." 42 U.S.C. § 423(d)(2)(A). To prove the existence of a disability, a claimant must present evidence that his condition "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

An ALJ considering a claim for SSI payments must undertake a five-step sequential evaluation process, which is set forth in 20 C.F.R. § 404.1520. First, if the claimant is working and the work constitutes substantial gainful activity, the ALJ must find that the claimant is not disabled regardless of his medical condition, age, education or work experience. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activity. 20 C.F.R. § 404.1520(c). Third, if a severe medical impairment is present and matches an entry on the list of impairments set forth in 20 C.F.R. part 404, subpart 4, app. 1, the ALJ must enter a finding

of disability without further consideration.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's severe medical impairment is not listed in 20 C.F.R. part 404, subpart 4, app. 1 and the ALJ finds that the claimant retains the residual functional capacity to perform past relevant work, the ALJ must find that the claimant is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if, however, the claimant cannot perform past relevant work, the ALJ must consider other factors including the claimant's residual functional capacity, age, education and past work experience to determine if the claimant can perform other work in the national economy.  20 C.F.R. § 404.1520(f).

**A.    Review of ALJ Friedman's Evaluation**

ALJ Friedman decided that Nieves was not disabled within the meaning of the Social Security Act.  In making this determination, the ALJ followed the required five-step sequential evaluation.  (Adimin. Rec. at 13-17.)

The first step of the evaluation required a determination of whether Nieves was engaged in a Substantial Gainful Activity ("SGA").  (Id. at 22.)  ALJ Friedman determined that Nieves had not engaged in disqualifying SGA since his medical condition made him stop working on January 10, 2001.  (Id.)  In the second step, the ALJ determined whether Nieves had a "severe" impairment.[1]  In

---

[1]    A severe impairment is defined as an impairment or combination of impairments which significantly limit (has more than a minimal effect on) an individual's ability to perform

making his determination he reviewed Nieves's testimony and the medical evidence in the record.  (Id. at 22.)  ALJ Friedman concluded that the evidence supported a finding that Nieves "has diabetes and hypertension, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  (Id.)

The third step required that ALJ Friedman determine whether Nieves had an impairment which meets the criteria of any listed impairments described in Appendix 1 of the Regulations.  The ALJ found that Nieves did not have an impairment that met or equaled Listing 9.08, which applies to diabetes mellitus and requires a plaintiff to have:

> Diabetes mellitus.  With:
>
> A. Neuropathy demonstrated by significant and persistent disorganization or motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station . . . ;
>
> B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests . . . ; or
>
> C. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 9.08.  Furthermore, the

---

basic work activities.  See 20 CFR § 416.920(c).  The impairment must either be expected to result in death or last continuously throughout one year.  20 CFR § 416.909.

Supreme Court of the United States has articulated that "[f]or a [plaintiff] to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

In the instant case, Nieves did not establish that he had medical impairments that rise to the level of severity of the Listing of Impairment, because he did not show criteria for the impairment as indicated in Listing 9.08. Nor did Nieves provide evidence to establish that he experienced the symptoms and criteria as indicated in Listing 9.08. Furthermore, the medical notes indicate that Nieves did not consistently medicate himself with insulin as prescribed and advised.

At the fourth step of the sequential evaluation, ALJ Friedman addressed whether Nieves retained the residual functional capacity to return to past relevant work. The ALJ concluded that Nieves retained the ability to perform light work as defined in 20 CFR 4040.1567 and 416.967 (lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk up to 6 hours in an 8 hour day; and sit up to 6 hours in an 8 hour day). (Admin. Rec. at 25.)

Nieves' central argument is that ALJ Friedman's decision, that he was not under a disability, is unsupported by substantial

-14-

evidence.[2]  The record demonstrates, however, that ALJ Friedman evaluated the medical evidence and provided a thorough explanation for his residual functional capacity finding.  The ALJ relied, in part, on the opinion of the State agency physician who reviewed Nieves' records.  The State agency physician assessed that Nieves had no exertional limitations.  Further, the ALJ also relied on Dr. Patel's conclusions that Nieves could perform light work because there was no evidence that he had neuropathy or vascular involvement.  In addition, Dr. Patel concluded that Nieves walked correctly and had no problems with his extremities, hands, and vision.  Moreover, an examination of the lungs and heart revealed that Nieves was not experiencing any problems.  Thus, ALJ Friedman reasonably concluded, based on the above evidence, that Nieves could engage in his past relevant light work.

Additionally, the ALJ noted that the medical evidence did not support Nieves alleged subjective complaints.  A plaintiff's subjective complaints must be evaluated against the objective medical evidence and other relevant evidence.  20 C.F.R. § 416.929(a),(c)(4).  Subjective complaints cannot be the only basis for finding a disability.  42. U.S.C. 1382c(a)(3)(A).

---

[2] The Court acknowledges Plaintiff's assertion that the ALJ incorrectly stated that his insured status expired on March 30, 2001.  The Court, however, need not address this argument because it does not go to the central issue:  the evaluation of the ALJ's findings.

Objective medical evidence may include physicians' clinical findings, observations, treatment and the plaintiff's medication. 20 C.F.R. § 416.929(c)(3).  The ALJ noted the subjective complaints asserted by Nieves, which included swelling of his feet when standing or walking for extended periods.  ALJ Friedman, however, also noted Nieves' daily activities, which undermined Nieves' statements that his symptoms were disabling. Nieves engaged in significant daily activities that could be considered light work.  Accordingly, the ALJ appropriately found that Nieves could perform his past work as a security guard, which required light work as he described.  (Admin. Rec. at 25, 64, 244-48.)

## CONCLUSION

For the foregoing reasons, Plaintiff's appeal is DENIED and the ALJ's findings are AFFIRMED.


/s/     John W. Bissell
JOHN W. BISSELL
Chief Judge
United States District Court


DATED:  August 30, 2005